1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10    RAYMOND C. CLYNE,

11                  Plaintiff,                    No. 2:12-cv-1473-EFB

12          vs.

13    CAROLYN W. COLVIN, Acting
      Commissioner of Social Security,

14
                    Defendant.              ORDER
15    _____/

16          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

17    ("Commissioner") denying his applications for a period of disability and Disability Insurance

18    Benefits ("DIB") and for Supplemental Security Income ("SSI") under Titles II and XVI of the

19    Social Security Act.  The parties' cross-motions for summary judgment are pending.  For the

20    reasons discussed below, the court grants the Commissioners motion and denies the plaintiff's

21    motion.

22    I.    BACKGROUND

23          Plaintiff filed applications for a period of disability, DIB, and SSI benefits on July 10,

24    2009, alleging that he had been disabled since June 15, 2006.  Administrative Record ("AR")

25    123-128.  His applications were initially denied on November 12, 2009, and upon

26    reconsideration on June 16, 2010.  *Id*. at 65-69, 71-75.  On January 11, 2011, a hearing was held

before administrative law judge ("ALJ") Stanley Hogg.  *Id.* at 34-57.  Plaintiff was represented by counsel at the hearing, at which he testified.  *Id.*

On February 24, 2011 the ALJ issued a decision finding that plaintiff was not disabled under sections 216(I), 223(d), and 1614(a)(3)(A) of the act.[1]  *Id.* at 16-25.  The ALJ made the following specific findings:

1.   The claimant meets the insured status requirement of the Social Security Act through December 31, 2010.

2.   The claimant has not engaged in substantial gainful activity since June 15, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.*  Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq.*  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Yuckert,* 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id.*

3.     The claimant has the following severe impairments: bipolar disorder, posttraumatic stress disorder, depressive disorder, personality disorder, and poly substance abuse dependence (20 CFR 404.1520(c) and 416.920(c)).

* * *

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

* * *

5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: he could perform unskilled, simple repetitive tasks involving no public contact, occasional interaction with co-workers and supervisors, and low stress work dealing primarily with objects rather than people.

* * *

6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

* * *

7.     The claimant was born on February 12, 1970 and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 4041569(a), 416.969, and 416.969(a)).

* * *

1    11.   The claimant has not been under a disability, as defined in the Social
           Security Act, from June 15, 2009, though the date of this decision (20
2          CFR 404.1520(g) and 416.920(g)).

3    *Id.* at 18-25.

4         Plaintiff requested that the Appeals Council review the ALJ's decision, *id.* at 12, and on

5    November 18, 2011, the Appeals Council denied review, leaving the ALJ's decision as the final

6    decision of the Commissioner.  *Id*. at 1-3.

7    II.   LEGAL STANDARDS

8         The Commissioner's decision that a claimant is not disabled will be upheld if the findings

9    of fact are supported by substantial evidence in the record and the proper legal standards were

10   applied.  *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000);

11   *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*,

12   180 F.3d 1094, 1097 (9th Cir. 1999).

13        The findings of the Commissioner as to any fact, if supported by substantial evidence, are

14   conclusive.  *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is

15   more than a mere scintilla, but less than a preponderance.  *Saelee v. Chater*, 94 F.3d 520, 521

16   (9th Cir. 1996).  "'It means such evidence as a reasonable mind might accept as adequate to

17   support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol.*

18   *Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

19        "The ALJ is responsible for determining credibility, resolving conflicts in medical

20   testimony, and resolving ambiguities."  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

21   2001) (citations omitted).  "Where the evidence is susceptible to more than one rational

22   interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

23   *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

24   III.   ANALYSIS

25        Plaintiff's argues that the erred ALJ by:  (1) failing to provide specific and legitimate

26   reasons for rejecting the opinion of plaintiff's treating physician; (2) discrediting plaintiff's

4

1   testimony without providing clear and convincing reasons; (3) failing to support the residual

2   functional capacity ("RFC") determination with substantial evidence; and (4) relying solely on

3   the Medical-Vocational Guidelines in determining that plaintiff was not disabled.

4          A.      The ALJ provided specific and legitimate reasons for rejecting plaintiff's

5                  treating physician's opinion.

6          Plaintiff first argues that the ALJ erred in rejecting the opinion of Dr. Paul Rogers,

7   plaintiff's treating physician, without providing legally sufficient reasons.  Pl.'s Mot. for Summ.

8   J., Mem. P. & A. (ECF 12-1) at 12-16.  The weight given to medical opinions depends in part on

9   whether they are proffered by treating, examining, or non-examining professionals.  *Lester v.*

10  *Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Ordinarily, more weight is given to the opinion of a

11  treating professional, who has a greater opportunity to know and observe the patient as an

12  individual.  *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).  To evaluate whether an

13  ALJ properly rejected a medical opinion, in addition to considering its source, the court

14  considers whether (1) contradictory opinions are in the record; and (2) clinical findings support

15  the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical

16  professional only for "clear and convincing" reasons.  *Lester*, 81 F.3d at 831.  In contrast, a

17  contradicted opinion of a treating or examining professional may be rejected for "specific and

18  legitimate" reasons that are supported by substantial evidence.  *Id*. at 830.  While a treating

19  professional's opinion generally is accorded superior weight, if it is contradicted by a supported

20  examining professional's opinion (e.g., supported by different independent clinical findings), the

21  ALJ may resolve the conflict.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing

22  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  However, "[w]hen an examining

23  physician relies on the same clinical findings as a treating physician, but differs only in his or her

24  conclusions, the conclusions of the examining physician are not 'substantial evidence.'"  *Orn v.*

25  *Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

26  /////

5

1    Here, Dr. Rogers began treating plaintiff in August 2009.  AR 343.  On January 5, 2011,

2    Dr. Rogers submitted a statement with a medical assessment regarding plaintiff's work-related

3    limitations.  *Id*. at 343-345.  The letter noted that since plaintiff was discharged from the military

4    in 1990, his longest job lasted one year, and that on average plaintiff would lose 3-5 jobs a year.

5    *Id*. at 3-4.  The letter noted plaintiff's attribution of this poor job history to his inability to get

6    along with co-workers and supervisors.  Dr. Rogers opined that plaintiff's inability to get along

7    in the workplace was a result of a dysfunctional upbringing.  *Id*.  He stated that plaintiff

8    "impressed [Dr. Rogers] as one who genuinely would like to perform routinely in the workplace,

9    but so far he has met with failure in this endeavor in serial fashion."  *Id*.  He further stated that he

10    had "little hope that [plaintiff] can ever consistently adjust to the realities of the workplace, even

11    given ongoing treatment . . . ."  *Id*.

12    Dr. Rogers opined that plaintiff had a good ability to follow work rules; a fair to poor

13    ability to relate to co-workers, deal with the public, and interact with supervisors; and a fair

14    ability to use judgment, deal with work stress, function independently, and maintain attention

15    and concentration.  *Id*. at 344.  He also opined that plaintiff had a fair ability to understand,

16    remember and carry out complex job instructions; to understand and carry out detailed, but not

17    complex job instructions; and to understand, remember, and carry out simple job instructions.

18    *Id*. at 345.  It was also Dr. Rogers' opinion that plaintiff had poor to no ability to relate

19    predictably in social situations and behave in an emotionally stable manner.  *Id*.

20    On October 7, 2009, plaintiff underwent a psychological examination conducted by Joe

21    M. Azevedo, Ph.D.  *Id*. at 258-262.  Dr. Azevedo, an examining physician, diagnosed plaintiff

22    with posttraumatic stress disorder; intermittent explosive disorder; cannabis dependence,

23    continuous; and alcohol dependence, in partial remission.  *Id*. at 261.  Based on his examination

24    and review of the available records, Dr. Azevedo opined that plaintiff has the cognitive ability to

25    understand, remember and carry out one and two-step instructions of mild to moderate levels of

26    complexity; has no significant limitations in his ability to maintain concentration and attention;

1   appears to be at least mildly limited in his ability to maintain persistence and pace; has the

2   general cognitive ability to make judgments on simple work-related decisions, but his history

3   suggests he may falter in this area; has significant difficulty managing work pressures and

4   adapting to changes in a typical employment setting, due to his anxiety, anger problems, and

5   social difficulties; and is moderately limited in his ability to interact appropriately with

6   supervisors, co-workers, and the general public on a consistent basis.

7        The record also contains the opinion of Dr. David Gross, a non-examining physician.

8   263-265.  Dr. Gross opined that plaintiff's understanding and memory, as well as concentration

9   and attention, were adequate to complete simple 1-2 step tasks for a full workday and full

10  workweek.  *Id*. at 265.  He further opined that plaintiff had the capacity to interact with peers and

11  supervisors, but not the public.  *Id*.  He also opined that plaintiff's adaptation capacity was

12  adequate for the usual work setting.  *Id*.

13       Plaintiff argues that the ALJ erred by rejecting the opinion of Dr. Rogers without

14  providing specific and legitimate reasons.  Dr. Rogers' opinion was contradicted by the opinions

15  of Drs. Azevedo and Gross, and the ALJ was free to reject Dr. Rogers opinion by providing

16  specific and legitimate reasons.

17       In discrediting Dr. Roger's opinion, the ALJ provided the following explanation:

18  Although a treating source, Dr. Rogers' opinion is unpersuasive for a variety of
    reasons.  First, Dr. Rogers' opinion is based on the claimant's representations that
19  he "would lose 3-5 jobs in any given year." (Ex. 11F/1).  However, the claimant's
    work history indicates that he has held a variety of jobs, each of about a year in
20  duration, at wireless retailer, retailer, taxicab, moving, and pest control companies
    from 1997 through 2005. (Ex. 3E).  Thus Dr. Rogers was relying on inaccurate
21  information concerning the claimant's work history.  Second, Dr. Rogers based
    his opinion largely on the claimant's subjective complaints, which as discussed
22  below are not entirely credible.  Third, Dr. Rogers' opinion is without significant
    objective support.  Specifically, while treating the claimant, Dr. Rogers noted
23  generally mild findings upon mental status examination including no cognitive
    deficits, no memory impairment, and linear thought process. (Ex. 10F).  Finally,
24  Dr. Rogers' opinion that the claimant has difficulty making adjustments in the
    workplace necessarily involves vocational knowledge of the abilities demanded in
25  today's labor market.  However, there is no indication that Dr. Rogers possess
    [sic] any such specialized knowledge.  Thus, Dr. Rogers' opinion is given little
26  weight.

7

*Id*. at 23.

Thus, the ALJ rejected Dr. Rogers' opinion because 1) it was based on inaccurate information, 2) it was based largely on plaintiff's subjective complaints, which were not entirely credible, 3) it was not supported by significant medical findings, and 4) Dr. Rogers did not possess the necessary specialized knowledge to provide an opinion about plaintiff's abilities to make adjustments in the workplace.

The finding that Dr. Rogers' opinion was based on inaccurate information is supported by substantial evidence in the record. In his work history report, plaintiff listed 14 different jobs held between May 1994 and June 2009. AR 144-159. Of these 14 jobs, plaintiff held 4 of these jobs for between 8 and 19 months. He worked at Georges's Pest Control for 19 months (May 1994 to December 1995), PageMax Wireless for 9 months (May 2001 to February 2002), Total Wireless for 15 months (January 2005 to April 2006), and Liberty Cab for 8 months (September 2007 to May 2008). *Id*. at 144-145. Although plaintiff held other positions for shorter durations, sometimes only working at a place for a couple weeks, his reported work history does not reflect that he would lose 3-5 jobs on an average year. Indeed, 2008 was the only year between 1994 and 2009 in which plaintiff held more than two different jobs: Liberty Cab company (September 2007 to May 2008), Buddies Auto Center (August 1, 2008 to August 8, 2008), and Chico Cab (November 2008 to April 2009). Accordingly, the court finds that substantial evidence supports the ALJ's finding that Dr. Rogers' opinion relied on inaccurate information.

Furthermore, it is clear that Dr. Rogers relied heavily on these statements in formulating his opinion. The opinion of a treating physician may be rejected where it is premised primarily on plaintiff's subjective complaints and the ALJ properly discounted plaintiff's credibility. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). The statement Dr. Rogers submitted specifically stated that plaintiff "*reported* to me at one visit that since his discharge from the service in 1990 his longest job lasted one year, and that on average he would lose 3-5 jobs in any given year. *He attributes* this poor job history to his inability to get along with co-workers or

1    supervisors." *Id*. at 343 (emphasis added).  Dr. Rogers went on to state that plaintiff's "mood

2    instability and inability to get along in the work place is, I believe a result of his upbringing.  *He*

3    *described* for myself as well as one of the social workers here a very dysfunctional family of

4    origin, one in which he was neglected and both physically and sexually abused." *Id*.  It is clear

5    from these statement that Dr. Rogers relied heavily on plaintiff's subjective complaints.

6    Moreover, he did not support his opinion with objective findings.  On the medical assessment

7    form he completed, when asked to "[d]escribe any limitations and include the medical/clinical

8    findings that support this assessment," Dr. Rogers wrote "See Written Statement Attached."  The

9    written statement, however, was devoid of objective findings and, as just discussed, indicates

10   that Dr. Rogers relied almost exclusively on plaintiff's subjective complaints.  As provided

11   below, the ALJ properly discounted plaintiff's subjective complaints.  Accordingly, Dr. Rogers'

12   reliance on plaintiff's subjective complaints in formulating his opinion was a specific and

13   legitimate reason for rejecting his treating opinion.

14       The ALJ also discounted Dr. Rogers' opinion because it lacked significant objective

15   support.  Specifically, the ALJ observed that "Dr. Rogers noted generally mild findings upon

16   mental status examination including no cognitive deficits, no memory impairment, and linear

17   thought process." AR 23.  An ALJ may reject a treating physician's opinion that is unsupported

18   by treatment notes and the physician offers no objective medical findings to support his opinion.

19   *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).  Plaintiff does not dispute that

20   Dr. Rogers' own treatment notes do not support his opinion.  Rather, plaintiff contends that Dr.

21   Rogers' opinion is supported by Dr. Azevedo's finding that plaintiff has intermittent explosive

22   disorder.  ECF No. 12-1.  First, this argument ignores the ALJ's finding that Dr. Rogers' own

23   treatment notes did not support his own opinion.  Second, Dr. Rogers only diagnosed plaintiff

24   with mood disorder NOS and rule out bipolar spectrum disorder.  *See* AR 295- 333.  He did not

25   agree with Dr. Azevedo's diagnose of intermittent explosive disorder.  Moreover, there is no

26   indication that he reviewed Dr. Azevedo's examination report and relied on his report in

9

1  formulating his opinion about plaintiff's functional limitations.  The mere fact that Dr.

2  Azevedo's diagnosis may have supported one of Dr. Rogers' opinions does not change the fact

3  that Dr. Rogers' own opinion was not supported by his treatment notes and other objective

4  findings.  Accordingly, the court finds that the ALJ properly rejected Dr. Rogers' opinion on this

5  basis.  *See Tonapetyan*, 242 F.3d at 1149 ("When confronted with conflicting medical opinions,

6  an ALJ need not accept a treating physician's opinion that is conclusory and brief and

7  unsupported by clinical findings.").

8        Lastly, the ALJ rejected Dr. Rogers' opinion that even with treatment that it was unlikely

9  that plaintiff would be able to consistently adjust to the realities of the workplace because such

10  an opinion "necessarily involves vocational knowledge of the abilities demanded in today's labor

11  market."  AR 23.  Dr. Rogers' opinion that plaintiff cannot "consistently adjust to the realities of

12  the workplace" is tantamount to an opinion that plaintiff is unable to consistently work.  An

13  opinion that an individual is unable to work is not binding on the Commissioner.  *See* 20 C.F.R.

14  § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work'

15  does not mean that we will determine that you are disabled.").[2]  Accordingly, the ALJ properly

16  rejected this opinion.

17        For the reasons stated above, the ALJ provided legally sufficient reasons for rejecting the

18  opinion of Dr. Rogers.

19  /////

20  /////

21

22        [2]  Plaintiff contends this opinion by Dr. Rogers was based on his finding that plaintiff lacked the ability to get along with others because of his upbringing.  ECF No. 12-1 at 15. Plaintiff therefore contends that this opinion was based on medical evidence and was not an

23  unsupported conclusion as to the ultimate disability determination.  *Id.*; *see Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012) (holding that an ALJ was required to give clear and convincing

24  reasons to reject an uncontradicted opinion that the plaintiff's mental and medical problems would make full time competitive work unlikely because the opinion was an assessment based

25  on medical evidence.  Even if plaintiff were correct, the ALJ provided three other specific and legitimate reasons for rejecting Dr. Rogers' opinion.  Thus, any error in finding that Dr. Rogers'

26  lacked the requisite knowledge to render such an opinion was harmless.

1    B.    The ALJ Properly Discounted Plaintiff's Subjective Complaints

2        Plaintiff next contends that the ALJ erred by failing to set forth clear and convincing

3    reasons for discrediting plaintiff's subjective complaints.  ECF No. 12-1 at 16.  In general, the

4    ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's

5    discretion if the ALJ used the proper process and provided proper reasons.  *See*, *e.g., Saelee*, 94

6    F.3d at 522.  If credibility is critical, the ALJ must make an explicit credibility finding.  *Albalos*

7    *v. Sullivan*, 907 F.2d 871, 873-74 (9th Cir. 1990); *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th

8    Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for

9    the disbelief").

10        In evaluating whether subjective complaints are credible, the ALJ should first consider

11    objective medical evidence and then consider other factors.  *Bunnell v. Sullivan*, 947 F.2d 341,

12    344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ

13    then may consider the nature of the symptoms alleged, including aggravating factors,

14    medication, treatment and functional restrictions.  *See id*. at 345-47.  The ALJ also may consider:

15    (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

16    testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

17    prescribed course of treatment, and (3) the applicant's daily activities.  *Smolen*, 80 F.3d

18    at 1284; *see generally* SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.

19    Work records, physician and third party testimony about nature, severity and effect of symptoms,

20    daily activities, precipitating and aggravating factors, inconsistencies between testimony and

21    conduct, and functional limitations resulting from symptoms should also be considered.  *Smolen*,

22    80 F.3d at 1284; *Light*, 119 F.3d at 792.  The ALJ may rely, in part, on his or her own

23    observations, *see Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot

24    substitute for medical diagnosis.  *Marcia v. Sullivan*, 900 F.2d 172,177 n.6 (9th Cir. 1990).  "If

25    the claimant submits objective medical findings establishing a medical impairment that would

26    normally produce a certain amount of pain, but testifies that [he] experiences pain at a higher

11

1   level... the Secretary is free to decide to disbelieve that testimony, but must make specific

2   findings justifying that decision." *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986).

3   "Without affirmative evidence showing that the claimant is malingering, the Commissioner's

4   reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan v.*

5   *Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

6         Here, the ALJ provided several reasons for discounting plaintiff's allegations concerning

7   the severity of his limitations.  First, the ALJ found that plaintiff's allegations were inconsistent

8   with the medical source statement from Dr. Azevedo, which support the finding that plaintiff

9   retains the ability to perform a wide range of unskilled non-public work.  AR 22.  The ALJ also

10  providing the following reasons for discrediting plaintiff's allegations:

11      Second, the claimant's allegations are inconsistent with his admissions to treating
    sources, which otherwise suggest that he is quite functional.  For example, the
12      claimant has stated that his mood swings are "less" with medication (Ex. 1f/12;
    10F/21); his mood is "okay" and he denies anhedonia (Ex. 10F/36); he is
13      "motivated to get things done" (Ex. 10F/36); he has a "pretty good handle" on his
    irritability (Ex. 10F21); Gabapentine helps him sleep (Ex. 10 F/1); and counseling
14      and medication are "helpful for mood stabilization" (Ex. 10F/1, 4).  In fact, the
    claimant's symptoms are so mild that he generally treated at mental health as
15      infrequently as once every two months. (Ex. 10F).

16      Third, the claimant has reported unstable mood and irritability primarily during
    periods of medication non-compliance. (Ex. 10F/34).  As such, the claimant has
17      stated that he "needs to take meds more consistently in order to feel better over
    time."  (Ex. 10F/34).  SSR 96-7p suggests that had the claimant genuinely felt
18      debilitating  symptoms, it would have been more likely that he would have
    adhered to reasonably recommended treatment plans.
19

20      The claimant's allegations are partially supported by his history of seeking
    treatment and involuntary psychiatric holds.  The claimant has been given a
    global assessment of functioning (GAF) score as low as 45 (Ex. 1F/19), . . . .
21      However, the claimant's eventual GAF score improvement [sic] to 60 to 65 (Ex.
    10F/26), and the weight of the cited evidence more supports the above residual
22      functional capacity.

23      Finally, the claimant alleges that he has limited physical abilities are inconsistent
    with the generally mild findings made by treating and examining sources. (Ex.
24      2F/4; 10F).  Despite alleging walking difficulties, the claimant has repeatedly
    demonstrated "normal" gait.  (Ex. 2F/3; 10F).  Despite alleging lifting difficulties,
25      examinations of the extremities have revealed no significant findings.  (Ex. 2F/3;
    10F).  Despite alleging difficulties bending,  The claimant has demonstrated full

26

musculoskeletal range of motion.  (Ex. 2f/3).  Indeed, treatment notes do not
indicate that the claimant has raised any concerns for the symptoms alleged.

Thus, while the claimant may experience some psychiatric-based symptoms, the
weight of the evidence suggests that he is nonetheless able to perform a wide
range of unskilled work.  Accordingly, the claimant's allegations . . . are generally
not credible.

AR 24

        While plaintiff makes a general claim that the ALJ failed to provide clear and convincing

reasons for discrediting his subjective complaints, he fails to address many of the specific

reasons stated by the ALJ for discrediting plaintiff's testimony.  Plaintiff's sole argument is that

the ALJ erred "by failing to make specific findings regarding his allegations that he could not

work due to explosive outburst, as well as, conflict with the people around him."  ECF No. 12-1

at 17.  The ALJ, however, specifically found that plaintiff's allegations were inconsistent with

the reports he gave to his treating sources.  The ALJ specifically observed that plaintiff stated

that his mood swings were less when medicated, and that he has a pretty good handle on his

irritability.  AR 23; *see* AR 234, 295, 298, 315, 330.  Plaintiff's inconsistent statements provide a

sufficient basis for discrediting his subjective complaints.[3]  *See Smolen*, 80 F.3d at 1284.

        C.      ALJ's RFC Determination

        Plaintiff also argues that the ALJ's RFC determination that plaintiff retains the ability to

perform a full range of work at all exertional levels is not supported by substantial evidence.

ECF No. 12-1 at 18-21.  Plaintiff contends that in assessing plaintiff's RFC, the ALJ failed to

account for Dr. Azevedo's diagnosis of intermittent explosive disorder and opinion that plaintiff

would have significant difficulty managing work pressures and adapting to changes in a typical

/////

/////

_____

        [3]  As plaintiff does not specifically contend that the other reasons provided by the ALJ
for discounting his credibility were insufficient, the court declines to determine whether those
reasons satisfied the clear and convincing standard.

1   employment setting.[4]  *Id.*; *see* AR 261

2        In discussing Dr. Azevedo's opinion, the ALJ specifically addressed Dr. Azevedo's

3   opinion that plaintiff would have significant difficulty adapting to changes in a typical

4   employment setting.  AR 22.  While he did not find that difficulty in adapting to diminish

5   plaintiff's RFC to the extend that plaintiff was no longer capable of performing unskilled jobs

6   involving no public contact and only occasional interaction with co-workers and supervisors, the

7   ALJ did not ignore the diagnosis and opinion of Dr. Azevedo.  The ALJ then discussed Dr.

8   Gross's opinion.  The ALJ observed that Dr Gross "generally agreed with Dr. Azevedo's

9   opinion; however he opined that the claimant has adequate social functioning interaction

10  capacity for dealing with peers and supervisors, but not with the public."  *Id*.  However, Dr.

11  Gross also opined that plaintiff's adaptation capacity was adequate for the usual work setting.

12  *Id.* at 265.  While this opinion conflicted with Dr. Azevedo's opinion that plaintiff has significant

13  difficulty adapting to changes in a typical employment setting, the ALJ was free to resolve the

14  conflict.[5]  Here, there is substantial evidence in the record to support the ALJ's finding that even

15  with the limitations on plaintiff's ability to manage work pressures and adapting to changes, as

16  reported by Dr. Azevedo, plaintiff still had the RFC to "perform a full range of work at all

17  exertional levels but with the following non-exertional limitations: he could perform unskilled,

18

19       [4]  Plaintiff also contends that the ALJ failed to account for Dr. Gross's opinion that
    plaintiff was moderately impaired in his ability to complete a normal workday without
20  interruptions from psychological based symptoms.  ECF No. 12-1.  Plaintiff, however, misreads
    Dr. Gross's opinion.  While Dr. Gross opined that plaintiff was moderately impaired in his
21  ability to complete a normal workday without instruction, AR 262, he opined that plaintiff was
    able to maintain concentration and attention for simple tasks for a full workday and full
22  workweek, AR 265.  Since the ALJ's RFC limited plaintiff to unskilled, simple repetitive tasks,
    the ALJ adequately accounted for Dr. Gross's opinion.

23

24       [5]  The ALJ specifically observed that SSR 85-15 provides that the basic demands
    required for performing unskilled work include the ability to deal with changes in routine work
25  setting.  AR 25.  Noting Dr. Azevedo's opinion that plaintiff had significant limitations in
    adapting to change in the typical employment setting, the ALJ found that plaintiff's RFC
26  nonetheless substantially satisfied the requirement that plaintiff be able to deal with changes in a
    routine work setting.  *Id.*

1   simple repetitive tasks involving no public contact, occasional interaction with co-workers and

2   supervisors, and low stress work dealing primarily with objects rather than people."  AR 18-25.

3   IV.   <u>CONCLUSION</u>

4         Based on the foregoing, IT IS ORDERED that:.

5         1.  Plaintiff's motion for summary judgment is denied;

6         2.  The Commissioner's cross-motion for summary judgment is granted; and

7         3.  The Clerk is directed to enter judgment in defendant's favor.

8   DATED:  September 25, 2013.

9

10                          EDMUND F. BRENNAN
                            UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26